IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| APRIL PALMER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL NO. H-05-3752 |
| | § | |
| JO ANNE B. BARNHART, | § | |
| COMMISSIONER OF THE | § | |
| SOCIAL SECURITY ADMINISTRATION, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION

Pending before the court[1] are Defendant's Motion for Summary Judgment (Document Entry No. 13) and Plaintiff's Motion for Summary Judgment (Document Entry No. 20). The court has considered the motions, all relevant filings, and the applicable law. For the reasons set forth below, the court **DENIES** Plaintiff's summary judgment motion and **GRANTS** Defendant's summary judgment motion.

### I.  Case Background

**A. Procedural History**

Plaintiff filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of a decision by the Commissioner of the Social Security Administration ("Commissioner") denying her application for a period of disability and disability insurance payments under Title II and Title XVI of the Social Security Act ("the Act").

---

[1] The parties consented to proceed before the undersigned magistrate judge for all proceedings, including trial and final judgment, pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73.  Docket Entry No. 17.

Plaintiff filed her application for disability insurance benefits on September 9, 2003, claiming an inability to work since June 12, 2002, due to manic depression and bipolar disorder.[2] After Plaintiff's application was denied at both the initial and reconsideration levels, she requested a hearing before an Administrative Law Judge of the Social Security Administration ("ALJ"). The ALJ granted Plaintiff's request and conducted a hearing in Houston, Texas, on February 18. 2005.[3] After listening to testimony presented at the hearing and reviewing the medical record, the ALJ issued an unfavorable decision on March 28, 2005.[4] The ALJ found Plaintiff was not disabled at any time during the period covered by her application, and Plaintiff appealed that decision on March 29, 2005.[5]

On September 23, 2005, the Appeals Council denied Plaintiff's request for review of the ALJ's decision, thereby making the ALJ's decision the final decision of the Commissioner.[6] Plaintiff then filed this timely civil action for judicial review of the Commissioner's unfavorable decision.

**B. Plaintiff's age, education, and work experience**

---

[2] Transcript of the Administrative Proceedings ("Tr.") 89-92, 117.

[3] Tr. 16, 32.

[4] See Tr. 16-22.

[5] Tr. 11.

[6] Tr. 4-6.

Plaintiff was born on April 7, 1973, and was twenty-eight years old at the time of the alleged onset of disability.[7] Plaintiff attended school through tenth grade, did not earn a General Equivalency Diploma (GED), and did not have any specialized or vocational training.[8]   Prior to the alleged onset of her disability, Plaintiff was employed as a waitress, a community coordinator, a sales person, a bridal consultant, a photographer, and a cashier.[9]

**C. Medical Record**

Plaintiff's medical record reflects a general history of mental disorders.   The record indicates that Plaintiff routinely complained of problems with controlling her temper, taking on responsibility, and dealing with anger.[10]  She reported attempting suicide at age ten and considering it at times since then, but she also indicated recognition that she had responsibilities to her children.[11]

By March 4, 2003, she was diagnosed with depression and bipolar disorder.[12]   At that time, she was placed on Zoloft, which

---

[7] Tr. 89, 327.

[8] Tr. 327-328, 345.

[9] Tr. 108.

[10] See, e.g., Tr. 133, 134, 161, 164, 176-178, 257-260.

[11] See Tr. 137, 141, 176, 259, 273, 277.

[12] Tr. 128.

she later reported helped "a lot" with her mood disorders.[13]  At some point, she also was prescribed Depakote.[14]   During her examinations, Plaintiff consistently complained of feeling angry and irritated,  and her doctors noted that she cried, rambled, and was otherwise agitated.[15]  The records also consistently referenced Plaintiff's long-term boyfriend or fiancé, and noted that she was well groomed, presented logical, organized thoughts, and was not delusional.[16]

On October 20, 2003, J.L. Patterson, Ph.D., ("Dr. Patterson"), a consultative examiner for the Disability Determination Services, reviewed the claimant's medical history, conducted an examination, and administered testing.[17]  His report stated that Plaintiff was able to care independently for her personal, residential, and transportation needs.[18]   It also noted that Plaintiff could communicate "adequately," could handle her own finances, and acted socially appropriately during the examination.[19]   Plaintiff's immediate, recent, and remote memory was found to be intact; her concentration, abstract thinking ability, and judgment appeared

---

[13] Tr. 128, 133.

[14] See Tr. 134.

[15] See, e.g., Tr. 128, 133.

[16] See, e.g., Tr. 127, 133, 135, 141, 161.

[17] Tr. 135-139.

[18] Tr. 136-137.

[19] Tr. 137.

"fair;" and her insight appeared "good."[20] Because Dr. Patterson found occasional suicidal ideation, depressed affect, and the suggestion of obsessive compulsive disorder ("OCD") symptoms during Plaintiff's mental status examination, he reported a "diagnostic impression" that she suffered from "Major Depression, recurrent, severe without psychotic features," and **"Obsessive Compulsive disorder."**[21]

Also during October 2003, Kelly Vance, M.D., ("Dr. Vance") diagnosed Plaintiff with "Major Depressive [Disorder], chronic" and recognized "OCD traits."[22]  Dr. Vance increased Plaintiff's dosage of Depakote, maintained her Zoloft prescription, and instructed Plaintiff to participate in group therapy.[23]

That same month, A. Boulos, M.D., ("Dr. Boulos") assessed Plaintiff's symptoms for the Social Security Administration and also wrote that Plaintiff had medically determinable disorders of major depression and obsessive compulsion.[24] He opined that, under the "B" criteria of the Listings, Plaintiff was mildly limited in her activities of daily living, and moderately limited in the areas of social functioning and maintaining concentration, persistance,

---

[20] Tr. 138.

[21] Tr. 137-138.

[22] Tr. 141.

[23] Id.

[24] Tr. 186, 188.

or pace.[25]  At the end of his consultant's notes, Dr. Boulos wrote
that the alleged limitations were not fully supported by the
evidence on record.[26]

Almost a year later, on September 28, 2004, Anant Mauskar,
M.D., ("Dr. Mauskar"), completed a Mental Impairment Questionnaire
and a Physical Residual Functional Capacity Evaluation of
Plaintiff.  He stated that he had almost monthly contact with
Plaintiff since 1999, and noted on the physical assessment, but not
the mental assessment, that the claimant was a malingerer.[27]  He
diagnosed Plaintiff with bipolar disorder and arthritis in her
shoulders, but did not reference depression or obsessive compulsive
disorder.[28]

**D. ALJ Hearing Testimony**

<u>1. Plaintiff's Testimony</u>

Plaintiff's testimony at the ALJ hearing generally comported
with her medical records.  Plaintiff explained that, as a young
woman, she changed schools multiple times due to mood swings and
consistent feelings that the teachers and other students were
picking on her.[29]  In tenth grade, Plaintiff dropped out of school

---

[25] Tr. 191.  "The Listings" or "a Listing" refers to impairments listed in
Appendix 1 of the Social Security Act regulations. 20 C.F.R. Pt. 404, Subpt. P,
App. 1.

[26] Tr. 195.

[27] Tr. 284, 285, 292.

[28] <u>See</u> Tr. 284-296.

[29] Tr. 344-345.

because of disciplinary problems caused by fighting with fellow students.[30]

At the time of the hearing, Plaintiff testified that on an average morning she walked her children to the school bus stop, then returned to her home to cook, clean, or complete other chores.[31] She explained that she was able to go shopping for her family, but her fiancé performed the majority of the household chores.[32] She estimated that she contributed to only about twenty percent of the domestic workload.[33]

Plaintiff claimed that she stopped working because her work environment and interactions with co-workers resulted in emotional instability.[34] When asked if she had any similar difficulties in her day-to-day life, Plaintiff stated that "regular activities," especially ones involving loud noises, could cause problems for her, and explained that she became "edgy or even short-tempered" when she felt overwhelmed by her children making noise.[35] Plaintiff reported that she participated in camping, bike riding, and skating activities.[36]

---

[30] Id.

[31] Tr. 332-333.

[32] Id.

[33] Id.

[34] Tr. 335.

[35] Id.

[36] Tr. 106.

In addition to her psychological ailments, Plaintiff claimed to suffer from arthritis in both of her shoulders and testified that she was prescribed medicine for the pain.[37]  While no such medicine was included in the initial list submitted by Plaintiff of her prescriptions, she did testify at the hearing to taking Naproxen.[38]  Lastly, she stated that, in a normal workday of sitting and standing as needed, she could be on her feet for a total of two hours and could sit down in forty-five to sixty minute intervals.[39]

### 2. Plaintiff's Mother's Testimony

Plaintiff's mother, Eugenia Dottery ("Dottery"), also testified at the hearing, stating that, since Plaintiff was a little girl, she made poor decisions and had trouble maintaining relationships.[40]  Corroborating Plaintiff's statements, Plaintiff's mother averred that Plaintiff was unable to control her emotions and maintain stability in her life.[41]  Dottery explained that Plaintiff had four children, each with a different father.[42]  She added that Plaintiff has had trouble with social interaction, to the extent that she engaged in physical altercations at

---

[37] Tr. 336-337.

[38] See Tr. 93, 339.

[39] Tr. 341.

[40] Tr. 358-360.

[41] Tr. 357.

[42] Tr. 356.

8

nightclubs.[43]   Lastly,  Plaintiff's  mother  testified  to  observing
Plaintiff  experience  momentary  mood  swings  from  giddiness  to
depression.[44]

### 3. Medical Expert's Testimony

George  Lazar,  Ph.D.,  ("Dr. Lazar"),  the  medical  expert  ("ME"),
opined  that  Plaintiff  satisfied  part  (A)  of  the  depression  and
manic  syndrome  criteria  for  Bipolar  Disorder  II,  but  did  not  meet
the  requisite  "B"  criteria  for  part  (B)  of  Listing  12.04,  and  thus
concluded  that  Plaintiff  did  not  meet  or  equal  a  Listing  for
purposes  of  establishing  a  disability.[45]  Dr. Lazar  testified  that,
despite  Plaintiff's  "long  history  of  mental  health  problems,"  she
only  "display[ed]  mild  to  moderate  restrictions  in  terms  of
activities  of  daily  living,  moderate  difficulties  in  maintaining
social   functioning,   moderate   difficulties   in   maintaining
concentration,  persistence  or  pace  and  there  is  an  evidence  for  one
episode  of  decompensation."[46]  During  his  initial  narrative,  the  ME
made  no  mention  of  obsessive  compulsive  disorder.

When  questioned  by  the  ALJ,  the  ME  opined  that  Plaintiff's
condition  would  preclude  her  from  jobs  that  required  intensive

---

[43] Tr. 356-357.

[44] Tr. 359.

[45] Tr. 363-64.

[46] Tr. 363-364

9

interaction with the public or supervisors.[47]  He asserted, though, that she could work in a quiet environment with limited interpersonal interaction, while also suggesting that she would be limited in her ability to carry out complex instructions and maintain persistence and pace.[48]  He testified that Plaintiff "could probably carry out one through three step simple instructions" and may need some periodic rest breaks while working.[49]

The ME was also questioned by Plaintiff's attorney.  During this exchange, Dr. Lazar confirmed that he read all of the medical records and elaborated on several of his earlier opinions.[50]  The ME also explained that the symptoms of obsessive compulsive disorder and depressive syndrome overlapped in some respects with those of a bipolar disorder from which he found Plaintiff to suffer.[51]  After further, exhaustive questioning, Dr. Lazar explained:

> I'm not saying that [Plaintiff] does not exhibit, like I said, traits of obsessive compulsive disorder.  My clinical opinion is that the best fitting diagnosis in her case is Bipolar Disorder II and, again, I have to repeat that, it doesn't matter, it wouldn't change my testimony in terms of Criteria "B" and "C" [if Plaintiff was instead diagnosed with OCD.][52]

---

[47] Tr. 365.

[48] Tr. 365-366.

[49] Tr. 366.

[50] Tr. 367.

[51] Tr. 372.

[52] Tr. 375.

10

The doctor also reiterated that a "Bipolar Disorder II diagnosis also includes major depression," and noted that he did not find "any consistent indication of psychotic features" in Plaintiff's medical record.[53]

### 4. Vocational Expert's Testimony

After reviewing the file and listening to the testimony of Plaintiff, her mother, and the ME, the vocational expert ("VE"), Kay Gilreath ("Gilreath"), opined that Plaintiff could not perform her past relevant work, but that she would be able to perform jobs that existed in significant numbers in the national economy.[54] Gilreath stated that all of Plaintiff's past occupations, except one, fell into the category of light, semi-skilled work according to Department of Labor standards.[55]

The ALJ posed several hypothetical questions to the VE. The first scenario asked Gilreath:

> to assume an individual with no exertional limitations of a duration of twelve months or more. Assume, however that I would find that this person would be precluded from performing complex work, although cognitively capable of one-to-three-step, simple instructions and operations, would be limited to no more than occassional interaction with the general public, coworkers and supervisors, would be precluded from performing work that would require a sustained persistence and pace for

---

[53] Tr. 376.

[54] See Tr. 379-383

[55] Tr. 378-379. The VE testified that Plaintiff's alterations job would be classified as "light to medium." Id. at 379.

prolonged periods of time.[56]

The VE testified that such an individual would not be able to perform Plaintiff's past relevant work, but that she could perform unskilled work, such as a furniture mover, kitchen helper, automobile porter, or industrial cleaner.[57]

Next, the ALJ asked:

> For purposes of my second hypothetical question, let me ask you to assume an individual limited exertionally to the performance of no more than medium work, as defined by the Department of Labor and reflected in the Social Security Administration's regulations.  Further assume that I would find that the person would be precluded from performing complex work, although cognitively capable of one-to-three-step, simple instructions, would be limited to no more than occasional interactions with the general public, coworkers, and supervisors and would be precluded from performing work that would require sustained persistence and pace for prolonged periods of time.[58]

In response to this scenario, the VE opined, "Well, all the medium exertional levels that I gave you in the first hypothetical would apply."[59]

Finally, the ALJ asked:

> For purposes then of the third hypothetical question, let me ask you to assume an individual limited exertionally to the performance of no more than light work, as defined by the Department of Labor and reflected in the Social Security Administration's regulations.  Again, assume that I would find that this person would be precluded from performing complex work, although capable of one-to-

---

[56] Tr. 380.

[57] Tr. 380-381.

[58] Tr. 381-382.

[59] Tr. 382.

three-step simple instructions, would be limited to no
more than occasional interaction with the general public,
coworkers and supervisors and would be precluded from
performing work that would require sustained persistence
and pace for prolonged periods of time.[60]

To this, the VE replied that such an individual would be able to

work as an office cleaner, photocopy machine operator, bottle line

attendant, and small products assembler.[61]

The ALJ then asked the vocational expert to consider

Plaintiff's testimony about her arthritic pain, which limited her

standing and walking to a maximum of two hours out of an eight-hour

day, back pain from prolonged sitting, and problems with her

shoulder and hand, along with the testimony Plaintiff gave

concerning her psychological difficulties.  The VE stated that if

the testimony was true and accurate, then Plaintiff would "be able

to find work but would not be able to sustain work because of the

symptoms mentioned."[62]

Plaintiff's attorney also questioned the vocational expert,

asking whether any of the following hypothetical individuals would

be employable: 1) one with no ability to maintain socially

appropriate skills, 2) one who needed to be absent more than three

days a month, 3) one with no ability to remember work-like

---

[60] Id.

[61] Tr. 382-383.

[62] Tr. 383.

13

procedures, or 4) one who attacks her supervisors.[63]   To each of these scenarios, the vocational expert opined that no competitive employment would be available to such an individual.[64]

**E. ALJ's Findings**

According to the ALJ, Plaintiff met the nondisability requirements for a period of disability and disability insurance benefits set forth in the Act and was insured for benefits through the date of that decision.[65]   The ALJ also found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date.[66]   Plaintiff's bipolar disorder was considered "severe" by the ALJ, based on the requirements of 20 CFR §§ 404.1520(c) and 416.920(c).[67]   Relying on medical expert testimony, the ALJ found that Plaintiff's only medically determinable severe impairment did not meet or equal any of the impairments in the Listings.[68]   Taking into consideration all of Plaintiff's mental disorders, the ALJ determined that they did not meet any of the mental impairment Listings because they had not caused marked restrictions on her ability to perform activities of daily living, her ability to

---

[63] Tr. 384.

[64] Tr. 384-385.

[65] Tr. 17.

[66] **Tr. 11.**

[67] Tr. 17-18.

[68] **Tr. 14.**

maintain social functioning, her ability to concentrate, or her ability to remain on task.[69]   Nor did they cause episodes of repeated decompensation.[70]   Moreover, he found no medically documented history of any disorder causing more than a minimal limitation on her ability to do basic work activities.[71] Additionally, the ALJ found Plaintiff's testimony regarding her impairments was not fully credible.[72]

Because Dr. Mauskar found that Plaintiff was a malingerer, the ALJ gave more weight to the objective medical evidence than to Plaintiff's subjective testimony.[73]   Consequently, Plaintiff's allegations of physical or mental symptoms were carefully evaluated by the ALJ in determining her ability to work.

The ALJ determined that Plaintiff's residual functional capacity ("RFC") was: restricted by "no physical limitations; capable of carrying out one-to-three-step work instructions; capable of only occasional interaction with general public, co-workers or supervisors; and, unable to maintain persistence and pace for prolonged periods."[74]   Although the ALJ determined that

---

[69] Tr. 19-22.

[70] Tr. 21.

[71] Tr. 20.

[72] Tr. 21.

[73] Tr. 18, 285.

[74] Tr. 18-19.

Plaintiff was not able to perform her past relevant work, using both the Medical-Vocational Guidelines and the testimony of the VE, he found that jobs existed in the national economy that Plaintiff could perform with her RFC.[75]  Therefore, the ALJ determined that Plaintiff was not disabled, and concluded that Plaintiff was never under a "disability," as defined in the Social Security Act, at any time through the date of the decision.[76]

## II.  Standard of Review and Applicable Law

The court's review of a final decision by the Commissioner to deny disability benefits is limited to two issues: 1) whether proper legal standards were used to evaluate the evidence; and 2) whether substantial record evidence supports the decision.  <u>Waters v. Barnhart</u>, 276 F.3d 716, 718 (5th Cir. 2002); <u>Brown v. Apfel</u>, 192 F.3d 492, 496 (5th Cir. 1999).

The widely accepted definition of "substantial evidence" is "something more than a scintilla but less than a preponderance." <u>Carey v. Apfel</u>, 230 F.3d 131, 135 (5th Cir. 2000); <u>Brown</u>, 192 F.3d at 496.  In applying this standard, the court is to review the entire record, but the court may not reweigh the evidence, decide the issues de novo, or substitute the court's judgment for the Commissioner's judgment.  <u>Brown</u>, 192 F.3d at 496.  The Commissioner is given the responsibility of deciding any conflicts in the

---

[75] Tr. 19-21.

[76] **Tr. 20-21.**

evidence.   <u>Id.</u>   "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."  42 U.S.C. § 405 (g).  Only if no credible evidentiary choices of medical findings exist to support the Commissioner's decision should the court overturn it.  <u>Johnson v. Bowen</u>, 864 F.2d 340, 343-44 (5th Cir. 1988).  In other words, the court is to defer to the decision of the Commissioner as much as is possible without making the court's review meaningless.   <u>Brown</u>, 192 F.3d at 496.

The legal standard for determining disability under the Act is whether the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(A).  To determine whether a claimant is capable of performing any "substantial gainful activity," the regulations provide that disability claims should be evaluated according to the following sequential five-step process:

> (1) a claimant who is working, engaging in a substantial gainful activity, will not be found to be disabled no matter what the medical findings are; (2) a claimant will not be found to be disabled unless he has a "severe impairment;" (3) a claimant whose impairment meets or is equivalent to an impairment listed in [20 C.F.R. Pt. 404, Subpt. P, App. 1] will be considered disabled without the need to consider vocational factors; (4) a claimant who is capable of performing work that he has done in the past must be found "not disabled;" and (5) if the claimant is unable to perform his previous work as a

17

result of his impairment, then factors such as his age, education, past work experience, and residual functional capacity must be considered to determine whether he can do other work.

Bowling v. Shalala, 36 F.3d 431, 435 (5th Cir. 1994).

To be entitled to benefits, a claimant bears the burden of proving he is disabled within the meaning of the Act.  Wren v. Sullivan, 925 F.2d 123, 125 (5th Cir. 1991).  By judicial practice, this translates into the claimant bearing the burden of proof on the first four of the above steps and the Commissioner bearing it on the fifth.  Brown, 192 F.3d at 498; Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994).  The analysis stops at any point in the five-step process upon a finding that the claimant is or is not disabled.  Greenspan, 38 F.3d at 236.

### III.  Analysis

**A. Plaintiff's Arguments**

Plaintiff requests judicial review of the ALJ's decision to deny disability benefits.  Plaintiff contends that the ALJ's decision is not supported by substantial evidence and that the ALJ did not follow proper legal procedures.[77]  Specifically, Plaintiff argues that: 1) The ALJ erred by rejecting and/or failing to evaluate Dr. Patterson's findings of major depression and obsessive-compulsive disorder; 2) the ALJ failed to properly

---

[77] Memorandum of Points and Authorities in Support of Plaintiff's Motion for Summary Judgment, Docket Entry No. 21.

discuss and/or weigh the testimony of Plaintiff's mother; and 3) the ALJ erred in failing to accurately portray the Plaintiff's mental limitations in his hypothetical question to the vocational expert.[78]  Defendant argues that the ALJ's decision is legally and factually correct, thus maintaining that the ALJ's decision should stand.

### 1. Consideration of Dr. Patterson's diagnosis

Plaintiff's first argument, that the ALJ failed to consider Dr. Patterson's diagnosis, is simply not supported by the record. Dr. Patterson diagnosed Plaintiff as suffering from "Major Depression, recurrent, severe without psychotic features" and "Obsessive Compulsive disorder."[79]  As the ALJ clearly noted, though, Dr. Patterson's examination also showed that Plaintiff had logical and coherent thought processes, intact immediate, recent, and remote memory, fair concentration, and average-range intellectual functioning.[80]

The ALJ fully evaluated the findings of the consultative evaluation.  His discussion of Dr. Patterson's diagnosis and his review of all mental disorder Listings provide sufficient evidence to indicate that he fairly considered the applicable diagnoses.[81]

---

[78] Id. at 11.

[79] Tr. 138.

[80] Tr. 137-38.

[81] See Tr. 18.

While Plaintiff cites the district court case <u>Kelly v. Chater</u> to support her proposition that the Fifth Circuit "requires the ALJ to explain his reasons for rejecting evidence favorable to" Plaintiff, in context, the court in <u>Kelly</u> is referring to evidence of the opinions of treating physicians, not simply any favorable evidence.[82]  The Fifth Circuit case <u>Falco v. Shalala</u>, which <u>Kelly</u> cites, specifically rejects adopting the "rule that an ALJ must articulate specifically the evidence that supported his decision and discuss the evidence that was rejected." <u>Falco v. Shalala</u>, 27 F.3d 160, 163 (5th Cir. 1994).[83]

Additionally, it was appropriate for the ALJ to give greater weight to the opinion of Plaintiff's treating physician, Dr. Mauskar, who diagnosed Plaintiff only with bipolar disorder, and Dr. Lazar, the ME who reviewed Plaintiff's entire medical record and was questioned by Plaintiff's attorney, than to the opinion of Dr. Patterson, a consultative examiner who saw Plaintiff one time. In fact, the Fifth Circuit has held that:

> The opinion of the treating physician who is familiar with the claimant's impairments, treatments and responses, should be accorded great weight in determining disability.  A treating physician's opinion on the nature

---

[82] <u>See</u> Memorandum in Support of Plaintiff's Motion for Summary Judgment, Docket Entry No. 21, p. 15 (quoting <u>Kelly v. Chater</u>, 952 F. Supp. 419, 426 (W.D. Tex. 1996)).

[83] In the case of evidence clearly favoring a claimant's *subjective complaints of pain,* Falco held that the ALJ must articulate the reasons for rejecting that evidence.  <u>Falco</u>, 27 F.3d at 163.  This is not an issue in the instant case.

> and severity of a patient's impairment will be given
> controlling weight if it is "well-supported by medically
> acceptable clinical and laboratory diagnostic techniques
> and is not inconsistent with . . . other substantial
> evidence."

Newton v. Apfel, 209 F.3d 448, 455 (5th Cir. 2000) (internal

citations omitted).  In Newton, the circuit also noted, "Even

though the opinion and diagnosis of a treating physician should be

afforded considerable weight in determining disability, the ALJ has

sole responsibility for determining a claimant's disability status.

The ALJ is free to reject the opinion of any physician when the

evidence supports a contrary conclusion." Id. (internal quotation

marks and citations omitted).

In other words, the ALJ may give less weight, or no weight at

all, to any physician's opinion with good cause.  The decision to

accept the opinion of the treating physician and the ME over that

of a non-treating psychologist is clearly supported by good cause.

In summary, the court finds that the ALJ considered

Plaintiff's indications of obsessive compulsive disorder and

depression.  In his decision, he clearly recognized Dr. Patterson's

conclusions.[84]  He also recognized Dr. Lazar's opinions related to

Plaintiff's impairments and provided a thorough explanation for

rejecting the psychologist's diagnosis.[85]

---

[84] See Tr. 18.

[85] Id.

The court finds that substantial record evidence exists in support of the ALJ's conclusion regarding Plaintiff's diagnosis. Therefore, his determination of Plaintiff's disability status cannot be disturbed.

### 2. Consideration of Plaintiff's mother's testimony

Plaintiff's second argument, that the ALJ failed to properly discuss and/or weigh the testimony of Plaintiff's mother, is also without merit.[86]  Citing <u>Francois v. United States</u>, 158 F.Supp.2d 748, 766 (E.D. La. 2001), Plaintiff argues that the ALJ may not selectively discuss only the evidence which favors his ultimate conclusion.  While true, as previously stated, **the ALJ also is not required to discuss every piece of evidence that was presented or that he considered.**[87]

In this case, the ALJ provided a fair discussion of the facts and evidence in the record.  Dottery's testimony did not include anything that would materially affect the ALJ's decision; it only reinforced that Plaintiff had problems with social interaction and mental health issues, which was already in the record.[88] Consequently, the limitations recognized by the ALJ in his hypothetical questions to the vocational expert reflected

---

[86] Tr. 20.

[87] <u>See</u> Memorandum of Points and Authorities in Support of Plaintiff's Motion for Summary Judgment, Docket Entry No. 21.

[88] Tr. 357-60.

Plaintiff's mother's testimony and concerns.  For example, the ALJ included in Plaintiff's RFC limited interaction with the general public, coworkers, and supervisors, which addresses Plaintiff's relational problems mentioned by her mother.  Merely failing to attribute those limitations explicitly to the testimony of Dottery was neither incorrect nor prejudicial to Plaintiff.

### 3. Defective hypotheticals

Finally, Plaintiff contended that the ALJ erred by failing in his hypothetical questions to accurately portray Plaintiff's psychological limitations.  A court must determine at the onset whether the ALJ's hypotheticals incorporated all limitations of the Plaintiff recognized by the ALJ.  <u>Bowling</u> 36 F.3d at 436.  In this case, they did.

The ALJ found that Plaintiff's allegations concerning the severity of her symptoms were not wholly credible, at least to the extent that they precluded all work.[89]  In formulating his hypotheticals, the ALJ included every symptom which was reasonably consistent with the objective medical evidence and other evidence based on the requirements of 20 C.F.R. §§ 404.1529 and 416.929.  As found above, the ALJ provided ample discussion in his decision regarding the limitations he included and excluded from Plaintiff's RFC.[90]

---

[89] Tr. 21.

[90] <u>See</u> Tr. 18-19.

23

Finding no legal error in the ALJ's decision, the court should not disturb it if substantial record evidence supports the ALJ's finding that Plaintiff is not disabled.  Plaintiff did not carry the required burden of demonstrating that her mental/physical impairments rose to a level of disability.  Even though Plaintiff has emotional outbursts, the evidence shows that Plaintiff was engaged to be married and able to take care of children and a residence even while maintaining certain activities like camping, bike riding, and skating.

The court must review the record with an eye toward determining only whether the ALJ's decision is supported by more than a scintilla of evidence.  <u>See Carey</u>, 230 F.3d at 135.  Because the court finds more than a scintilla of evidence exists in support of the ALJ's decision, the Commissioner's decision must stand.  It is the role of the ALJ to weigh the evidence and decide disputes. <u>See</u> <u>Chambliss v. Massanari</u>, 269 F.3d 520, 522 (5th Cir. 2001); <u>Carrier v. Sullivan</u>, 944 F.2d 243, 247 (5th Cir. 1991).

## IV.  Conclusion

Based on the foregoing, the court **GRANTS** Defendant's summary judgment motion and **DENIES** Plaintiff's summary judgment motion.

**SIGNED** in Houston, Texas, this 19th day of September, 2006.

Nancy K. Johnson
United States Magistrate Judge

24